# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

---

JESSE EUGENE SILVESTRINI,                    CASE NO.: 10-CV-01919 MJD/TNL

                    Petitioner,

V.                                           **REPORT AND RECOMMENDATION**

WARDEN BRUCE REISER,

                    Respondent.

---

Jesse Eugene Silvestrini, Minnesota Correctional Facility – Rush City, 525th Street, Rush City, MN 55069, *pro se* Petitioner; and

Brian D. Simonson, St. Louis County Attorney's Office, 1812 12th Avenue East, Suite 107, Hibbing, MN 55746, for Respondent.

## I.      INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Docket No. 1. Petitioner Jesse Silvestrini is an inmate confined at Minnesota Correction Facility – Rush City, in Rush City, Minnesota. *Id.* Petitioner is serving a 288-month prison sentence imposed by the St. Louis County District Court in connection with multiple charges and convictions arising out of a single incident that occurred on November 25, 2004. *State v. Silvestrini*, No. A07-1776, 2009 WL 233370 at *1 (Minn. Ct. App. Apr. 29, 2009), *review den.* (Apr. 29, 2007).

1

The matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and District of Minnesota Local Rule 72.1. For the reasons set forth below, **IT IS HEREBY RECOMMENDED** that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Docket No. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

## II.      BACKGROUND

### A.  State Appellate Court's Recitation of the Facts

In the early morning hours of November 25, 2004, "a violent home invasion" occurred at the residence of the victim, M.H., in Hibbing, Minnesota. *Silvestrini*, 2009 WL 233370, at *1. During the invasion, M.H. was struck on the back with what he believed was a modified bat. *Id.* at *12. Four of M.H.'s front teeth were knocked out, and he was bleeding profusely from the mouth. *Id.* at *4. He also testified that he twice heard a "clicking" noise that sounded like someone pulling the trigger of a gun. *Id.* at *12.

Less than ten minutes after M.H. escaped the home and called the police, State Trooper Mark Shepard – an officer responding to the call – saw Petitioner walking out of a wooded area and onto a sidewalk approximately one quarter-mile from the site of the home invasion. *Id.* at *2.

> Trooper Shepard became suspicious when he observed Silvestrini walking alone, late at night, not in a residential area, and near the crime scene. Shepard became more suspicious when, even from 15 or 20 feet away, he could see a large bump over Silvestrini's eye and abrasions that appeared to be fresh because they "glistened" in the spotlight at night. Shepard, concerned for his safety, ordered Silvestrini to get down on his knees and place his hands behind his head.

2

> As Shepard approached Silvestrini, he noticed that the big bump on Silvestrini's head looked like he had been struck with something and the area was red and pussy. When asked, however, Silvestrini had told Shepard that the injury happened earlier when he was playing around with his dog. Based on his experience, Shepard doubted this story and believed the injury was fresh.
>
> During the next approximately ten minutes, Trooper Shepard handcuffed and frisked Silvestrini, contacted the Hibbing police department, placed Silvestrini in the back of his squad car, and transported Silvestrini to the crime scene to determine whether one of the two victims would identify him…
>
> The victim was unable to identify Silvestrini, but the police nonetheless transported him from the crime scene to the police station [where he gave two tape recorded statements to police]. The state concedes that Silvestrini was under arrest at this point.

*Id.* at *2-3.

The first statement made by Petitioner discussed his knowledge of the area surrounding the home invasion and his whereabouts during the day preceding the home invasion. *Id.* at *5. The second statement discussed his whereabouts on the night of the incident and was inconsistent with the first statement. *Id.* Prior to making each statement, Petitioner was read his *Miranda* rights by the questioning officer, and each time he waived those rights. *Id.* at *6. After making these two statements, Petitioner was released from custody. *Id.* Each of these statements was admitted at trial. *Id.* at *1.

After releasing Petitioner, the police continued to investigate the area around the home. *Id.* at *5. Acting independently of anything contained in Petitioner's statements, the police discovered camouflage masks, hats, sweatshirts, sweatpants, and a roll of duct

tape stashed in some nearby bushes. *Id.* at *6. The police used the Universal Product Code (UPC) on one of the masks to trace the items' purchase to a local Wal-Mart. *Id.* Wal-Mart provided police with a receipt showing the time of purchase and a surveillance video of Petitioner and other individuals purchasing the items approximately thirty minutes before the home invasion. *Id.* at *5.

This evidence led the police to re-arrest Petitioner, at which time Petitioner made two more statements to police. *Id.* These subsequent statements revealed (1) Petitioner's knowledge concerning events that immediately preceded the home invasion, (2) Petitioner's motive for targeting the victim, and (3) inconsistency with Petitioner's previously proffered alibi. *Id.* at *5. In one of these statements Petitioner also told officers that the gun used in the invasion did not work when the individuals with him attempted to fire it. *Id.* at *12. Each of these statements was admitted at trial. *Id.* at *6.

The jury also heard testimony indicating that (1) Petitioner's DNA was found on one of the camouflage masks, *id.* at *5; (2) M.H. had inculpated Petitioner in a prior crime in 2002 that resulted in a conviction, *id.* at *4; (3) M.H. recalled having a gun pointed directly at his head during the altercation, *id.* at *12; and (4) analysis of the crime scene also found firing pin markings on two pistol cartridges discovered inside the home, indicating that one of the intruders attempted to fire the gun but that it misfired. *Id.*

On June 15, 2007, a jury convicted Petitioner of two counts of attempted first-degree murder, Minn. Stat. §§ 609.185 and 609.17; first-degree assault, Minn. Stat. § 609.221; three counts of first-degree burglary, Minn. Stat. § 609.582; attempted first-

degree aggravated robbery, Minn. Stat. § 609.245; second-degree assault, Minn. Stat. § 609.222; and being an ineligible person in possession of a firearm, Minn. Stat. § 624.713. Docket No. 1. The district court sentenced Petitioner to 60 months of imprisonment for violating the possession-of-a-firearm statute, 108 months for one of the burglary convictions, and 180 months for one of the attempted murder convictions. Docket No. 8.

Petitioner appealed each of his convictions to the Minnesota Court of Appeals, arguing "that the district court (1) erred by denying his motion to suppress statements made to police; (2) violated his constitutional right to present a defense by excluding exculpatory hearsay testimony and denying him the right to challenge DNA evidence; and (3) violated his right to a fair trial by repeatedly interjecting itself *sua sponte* into the trial." *Silvestrini*, 2009 WL 233370, at *1. Petitioner also argued on direct appeal "that his attempted-murder conviction was not supported by sufficient evidence." *Id.*

The Minnesota Court of Appeals affirmed Petitioners' convictions on February 3, 2009. *Id.* at *12. But, in doing so, the Court of Appeals noted that the motion to suppress statements obtained after Petitioner's initial arrest should have been granted because the arrest was unsupported by probable cause, *id.* at * 4; nevertheless, the Minnesota Court of Appeals held that admission of the statement amounted to harmless error. The Minnesota Court of Appeals rejected each of Petitioner's other arguments on appeal. Petitioner requested the Minnesota Supreme Court review the Minnesota Court of Appeals decision,

which was denied. *State v. Silvestrini*, 2009 WL 233370 (Minn. App. Feb 03, 2009) (NO. A07-1776), *review den*. (Apr 29, 2009).

### B.  This Court's Review of the Trial Record

This Court has reviewed Petitioner's trial record. In addition to confirming the facts recited by the Minnesota Court of Appeals, this Court notes that the record includes extensive testimony from M.H., describing how he was awakened by his girlfriend when she heard loud knocking at the front door during the early morning hours of Thanksgiving Day, 2004. Trial Tr. vol. 3, 287-350, Apr. 17, 2007. While he thought the people at the door would simply leave, they instead broke into the house and ran up the steps to his bedroom. *Id.* at 288. Wearing camouflage facemasks and wielding mace, a gun, and a modified bat, the intruders sprayed M.H.'s girlfriend with mace, demanded access to M.H.'s safe, and beat M.H. with the bat while pointing the gun at them. *Id.* at 288-94. M.H. also testified that the gun was held "[w]ithin an inch" of his head when he heard it "click," a sound he believed to be the gun misfiring. *Id.* at 295.

When the gun would not fire, M.H. attempted to escape by running down the stairs and out of the house to call for help. *Id.* at 297. He reached the bottom of the steps, but was unable to open the door before he was hit on the back with the bat. *Id.* at 298. A physical altercation with both intruders ensued on the main floor of the house, and eventually M.H. was able to hit the intruder wielding the gun hard enough to knock him down. *Id.* at 298-300. That intruder hit his head on the corner of a table as he fell. *Id.* at

300-01. M.H. testified that at this point he was able to run out the front door and across the street to a neighbor's house where he called the police. *Id.* at 303-09.

The trial transcript also contains the two recorded statements Petitioner gave to police following his arrest by the Hibbing Police Department. *See* Trial Tr. vol. 5, 575-643, 650-710 Apr. 19, 2007. Both statements were given at the Hibbing Police Department building, the first beginning at 5:28AM on November 25, 2004, and the second beginning at 9:06AM on the same morning. In the first statement, Petitioner (1) denied any involvement in the home invasion, (2) stated he sustained the head wound while playing with his dog, and (3) discussed his whereabouts during the day preceding the home invasion. *Id.* at 575-643. In the second statement, Petitioner (1) admitted he had knowledge of the plan for the home invasion at least three weeks prior to its occurrence, (2) provided an alibi for his whereabouts during the home invasion, and (3) contradicted his prior statement as to his whereabouts on the day preceding the home invasion. *Id.* at 650-710.

In contradiction of some of the contents of these statements, the record contains the testimony of the mother of one of Petitioner's acquaintances. *Id.* 719-20. Petitioner stated in his statement that he had stopped by her house on the night of the home invasion, that he had spoken with her and learned that his acquaintance was asleep, and that he had begun walking back to Chisholm, Minnesota when he was arrested by Trooper Shepard. Trial Tr. vol 6, 807, Apr. 20, 2007. She testified that Petitioner never

came to her house on that date and that she never spoke with him. Trial Tr. vol. 5, 720, Apr. 19, 2007.

The record also contains testimony from an inmate who was housed with Petitioner in the St. Louis County Jail in 2006. Trial Tr. vol. 6, 868, Apr. 20, 2007. This inmate testified that Petitioner told him about the home invasion while they were incarcerated, reciting numerous details of the event including the names of accomplices and the weapons used, and provided a description of the events that unfolded within the home. *Id.* at 868-72. The inmate also testified that Petitioner told him that he wielded the gun during the home invasion. *Id.*

### C. Procedural Posture

Petitioner raises four issues in the current Petition. First, he argues that the Minnesota courts erred by allowing the jury to hear two recorded statements Petitioner made to the police on the morning of November 25, 2004, and the Minnesota courts erred in finding the admission of those statements to be harmless error in violation of the Exclusionary Rule and Petitioner's Fourth Amendment rights.[1] Second, he argues that the Minnesota courts violated his Fourth Amendment rights by refusing to suppress evidence gathered as a result of a search that exceeded the scope of a lawful *Terry* stop. Third, he argues that the trial court violated his Sixth Amendment right to present favorable

---

[1] While Petitioner argues in his submissions to the Court that "finding this error harmless [denied] Petitioner's right to a jury trial" (Docket No. 2), this argument is improperly articulated as a Sixth Amendment claim. Construing Petitioner's *pro se* Petition liberally, this Court believes Petitioner has articulated an argument under the Exclusionary Rule, the appropriate remedy for a violation of Petitioner's Fourth Amendment rights. *Mapp v. Ohio*, 367 U.S. 643 (1961).

witnesses by refusing to admit hearsay accomplice testimony at trial. Finally, he argues that the trial court violated his Sixth Amendment right to a fair trial by improperly interjecting itself *sua sponte* into the trial. Respondent opposes the motion.

## III.   ANALYSIS

For the reasons set forth below, this Court recommends that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Docket No. 1) be denied.

### A. Statutory Scheme under 28 U.S.C. § 2254

A state prisoner may petition a federal court for habeas relief if "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The scope of habeas relief is set forth in the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), which limits habeas relief to adjudications that:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

*Id.* at § 2254(d).

The "contrary to" and "unreasonable application" clauses were explained by the United States Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000): "[a] state court decision is 'contrary to' Supreme Court precedent if it either 'arrives at a conclusion opposite that reached by the Supreme Court on a question or law' or 'decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'"

*Kohser v. Roerich*, Case No. 05-CV-3018(JMR/SRN), 2008 WL 2705081, at *3 (D. Minn. Jul. 7, 2008) (quoting *Williams*, 529 U.S. at 411) (brackets omitted). "A state court decision is an 'unreasonable application' of Supreme Court precedent if it 'identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

Further, the Eighth Circuit has instructed federal courts reviewing habeas petitions to presume "that the state court's factual determinations are correct." *Lee v. Gammon*, 222 F.3d 441, 442 (8th Cir. 2000). This deference is given to the factual determinations made by both the relevant state trial courts and state appellate courts. *Sumner v. Mata*, 449 U.S. 539, 547 (1981). The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Whitehead v. Dormire*, 340 F.3d 532, 539 (8th Cir. 2003).

Before bringing a federal habeas petition, a petitioner must exhaust all available state court remedies. *Kohser*, 2008 WL 2705081, at *3. This procedural standard is met by fairly presenting his federal constitutional claims to the highest available state court. *Id.* (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). There is no dispute in this case that Petitioner exhausted his state court remedies.

[Continued on next page.]

### B.  Statements made to the police following arrest

The Exclusionary Rule, applicable to cases involving unreasonable seizures, requires the exclusion of evidence obtained in violation of the Fourth Amendment.[2] *Weeks v. United States*, 232 U.S. 383, 398-99 (1914); *see also Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963).   "When a state court admits such evidence, it has committed a Constitutional error, and unless that error is harmless under federal standards, it follows ineluctably that the defendant has been placed 'in custody in violation of the Constitution' with in the comprehension of 28 U.S.C. § 2254."  *Stone v. Powell*, 428 U.S. 465, 509, 96 S.Ct. 3037, 3059 (1976) (citing *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824 (1967)).

Petitioner argues that the trial court erred by allowing the jury to hear two tape recorded statements Petitioner made to police on the morning of November 25, 2004. The Minnesota Court of Appeals concluded that he was unreasonably seized without probable cause and the trial court erred by failing to suppress Petitioner's two statements. The Minnesota Court of Appeals agreed with Petitioner that his constitutional right was violated, but also concluded the admission of his statements was harmless error. *Silvestrini* 2009 WL 233370, at *4.

 For the reasons set forth below, this Court concludes that the error committed by admitting Petitioner's two initial statements into evidence did not have substantial and injurious effect or influence in determining the jury's verdict. Accordingly, it is

---

[2] The Supreme Court has found this right applies to the states through the Due Process Clause of the Fourteenth Amendment. *Mapp*, 367 U.S. at 655.

recommended that Petitioner's claim for relief due to the admission of inadmissible statements be denied.

### 1. Standard of Review for Harmless Error

Petitioner asserts that admission of these two statements was not harmless error because (1) the statements were used "extensively" in closing arguments; (2) the statements were very lengthy; and (3) the contents of the statements went to motive, knowledge, opportunity, and prior criminal behavior. Docket No. 1. Petitioner urges that, in conducting a harmless error analysis, this Court's inquiry should be to ask "whether the jury's verdict is surely unattributable [sic] to the error." *Id.*

Respondent argues, much as the Minnesota Court of Appeals found, that the "abundance" of other admissible evidence leads to the conclusion that no other verdict more favorable to Petitioner would have been found if the inadmissible evidence was not introduced. Docket No. 8. Respondent also disputes the standard of review articulated by Petitioner, arguing that the proper inquiry is whether the constitutional error "had [a] substantial and injurious effect or influence in determining the jury's verdict." *Kotteakos v. United States*, 328 U.S. 750, 776 (1946); *see also Brecht v. Abrahamson*, 507 U.S. 619, 638-39 (1993).

The standard of review articulated by Respondent is correct. As stated in *Toua Hong Chang v. Minnesota*:

> Under *Brecht* [*v. Abrahamson*, 507 U.S. at 638-39], habeas relief is proper only if the error had a "substantial and injurious effect or influence in determining the jury's verdict." A "substantial and injurious effect" occurs when the court

finds itself in "grave doubt" about the effect of the error on the jury's verdict. "Grave doubt" exists where the issue of harmlessness is "so evenly balanced that [the court] feels [itself] in virtual equipoise as to the harmlessness of the error."

521 F.3d 828, 832 (8th Cir. 2008) (citations omitted).

## 2.      Assault Convictions

Aside from the statements of Petitioner that the Minnesota Court of Appeals held were admitted in error and aside from the properly admitted statements of Petitioner, the jury heard the testimony of M.H. stating that (1) he was beaten by the intruders in his home with a modified bat, causing him to lose four teeth, Trial Tr. vol. 3, 298, Apr. 17, 2007; (2) the intruders sprayed his girlfriend with mace at close range, *id.* at 287-88; and (3) he struck one of the intruders, causing the intruder to hit his head on the corner of the table. *Id.* at 298-301. The jury also heard testimony that, less than ten minutes later and less than three-tenths of a mile from the home, Trooper Shepard saw Petitioner walk out of a wooded area and onto a sidewalk. *Silvestrini*, 2009 WL 233370, at *2. A short distance away, duct tape, a camouflage mask, hats, and a sweatshirt, were found stashed in a thicket. *Id.* at *6. The jury also saw surveillance video captured approximately thirty minutes prior to the home invasion at the Wal-Mart in Hibbing, Minnesota. *Id.* at *5. The video showed Petitioner and his accomplices purchasing the camouflage masks that were later discovered near the home. *Id.*

Having reviewed the record and being directed to no errors in the Minnesota Court of Appeals' factual determinations, this Court concludes that the statements admitted in

error did not have a "substantial and injurious effect or influence" on the jury's determination that Petitioner was guilty of first and second-degree assault. *Toua Hong Chang*, 521 F.3d at 832 (quotations omitted).

### 3.      Burglary and Robbery Convictions

Aside from the statements of Petitioner that the Minnesota Court of Appeals held were admitted in error, aside from the properly admitted statements of Petitioner, and in addition to the evidence cited above, the jury heard the testimony of M.H. stating that (1) he and his girlfriend were in his home at the time of the invasion, (2) both he and his girlfriend were assaulted during the home invasion, and (3) the intruders demanded access to M.H.'s safe. Trial Tr. vol. 3, 298, Apr. 17, 2007. M.H. also testified that he struck one of the intruders, causing the intruder to hit his head on the corner of the table. *Id.* at 298-301.

Having reviewed the record and being directed to no errors in the Minnesota Court of Appeals' factual determinations, this Court concludes that the statements admitted in error did not have a "substantial and injurious effect or influence" on the jury's determination that Petitioner was guilty of first-degree burglary and first-degree aggravated robbery. *Toua Hong Chang*, 521 F.3d at 832 (quotations omitted).

### 4.      Attempted Murder Convictions

Under Minnesota law, a person is guilty of first-degree murder if he "(1) cause[d] the death of a human being with premeditation and with intent to effect the death of the person or of another; [or]… (3) cause[d] the death of a human being with intent to effect

14

the death of the person or another, while committing or attempting to commit burglary." A person is guilty of an attempted crime "if he acted with the intent to commit a crime and [took] a substantial step towards the commission of that crime." Minn. Stat. § 609.17(1).

Aside from the statements of Petitioner that the Minnesota Court of Appeals held were admitted in error, aside from the properly admitted statements of Petitioner, and in addition to the evidence cited above, the jury heard testimony from M.H. stating that one of the intruders pointed a gun at him, held it "within an inch" of his head, and that he heard the gun "click" on two separate occasions, a sound he believed to be the gun misfiring. Trial Tr. vol. 3, 295, Apr. 17, 2007. Forensic evidence corroborated this testimony, showing firing pin markings on two pistol cartridges discovered inside the home, which indicated that the trigger was pulled, but the gun misfired. *Silvestrini*, 2009 WL 233370, at *12. M.H. testified that he struck the intruder wielding the gun, causing him to fall and hit his head on the corner of a table. Trial Tr. vol. 3, 298-300, Apr. 17, 2007. Trooper Shepard then testified that shortly after the home invasion, he saw Petitioner walking alone near the home with a fresh wound on his head. *Silvestrini*, 2009 WL 233370, at *12.

Having reviewed the record and being directed to no errors in the Minnesota Court of Appeals' factual determinations, this Court concludes that the statements admitted in error did not have a "substantial and injurious effect or influence" on the jury's

determination that Petitioner was guilty of attempted first-degree murder. *Toua Hong Chang*, 521 F.3d at 832 (quotations omitted).

### 5.        Ineligible Possession of a Firearm Conviction

Prior to trial, Petitioner stipulated to having a prior felony conviction. Trial Tr. vol. 2, 84, Apr. 16, 2007.  Aside from the statements of Petitioner that the Minnesota Court of Appeals held were admitted in error, aside from the properly admitted statements of Petitioner, and in addition to the evidence cited above, the jury heard testimony from an inmate who was housed with Petitioner in the St. Louis County Jail in 2006. Trial Tr. vol. 6, 868, Apr. 20, 2007. The inmate testified that Petitioner told him about the home invasion while they were incarcerated, correctly reciting numerous details of the event including the names of accomplices, the weapons used, and a description of the events that unfolded within the home. *Id.* at 868-72. The inmate also testified that Petitioner told him that he wielded the gun during the home invasion. *Id.*

Having reviewed the record and being directed to no errors in the Minnesota Court of Appeals' factual determinations, this Court concludes that the statements admitted in error did not have a "substantial and injurious effect or influence" on the jury's determination that Petitioner was guilty of being an ineligible person in possession of a firearm, Minn. Stat. § 624.713.  *Toua Hong Chang*, 521 F.3d at 832 (quotations omitted).

### C. Search and Seizure

Petitioner next claims that the Minnesota courts erred in not suppressing evidence gathered as a result of a seizure that allegedly exceeded the permissible scope of a lawful

*Terry* search. Docket No. 2. Petitioner produces no factual arguments detailing the specific searches and seizures that allegedly violated his Fourth Amendment rights.

Under the Exclusionary Rule, evidence seized in violation of the Fourth Amendment generally must be suppressed. *Weeks*, 232 U.S. at 398-99; *Mapp*, 367 U.S. at 655. The Supreme Court, however, has limited the scope of inquiry that a habeas court will make when reviewing a petition from state courts. In *Stone v. Powell*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. 465, 481-82 (1976). The Eighth Circuit has interpreted *Stone* to bar state petitioners from bringing Fourth Amendment claims in their habeas petitions "unless either the state provided no procedure by which the prisoner could raise his Fourth Amendment claim, or the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the [state] system." *Willett v. Lockhart*, 37 F.3d 1265, 1273 (1994).

Because Petitioner is a state prisoner, this Court is limited to determining whether Petitioner had the full and fair opportunity to litigate his Fourth Amendment claims in state court. *Id.* In his submissions to this Court, Petitioner does not argue that the Minnesota courts lacked an adequate procedure to evaluate his Fourth Amendment claims. Instead, he simply attacks the conclusion of the Minnesota Court of Appeals. Docket No. 1. This is precisely the type of inquiry a federal habeas court is not permitted

to undertake under the Supreme Court's decision in *Stone. See Willett*, 37 F.3d at 1273. The fact that Petitioner was able to raise claims of Fourth Amendment violations on appeal indicates that the Minnesota courts have in place the requisite procedure for raising Fourth Amendment claims. It is here that this Court's inquiry must end. *See id.* Further examination would rebuff the Eighth Circuit's direction that federal courts "not…consider whether full and fair litigation of the claims in fact occurred in the state courts, but only whether the state provided an opportunity for such litigation." *Id.*

Petitioner had a full and fair opportunity to argue his Fourth Amendment claims before the Minnesota courts, and he has not asserted grounds in his Petition that there has been an unconscionable breakdown in Minnesota's litigation process for Fourth Amendment claims.  Therefore, it is recommended that his claims relating to the scope of the *Terry* search be denied.

### D.  Hearsay Evidence

Petitioner next argues that the state courts "erred by excluding hearsay evidence of accomplice testimony, thereby denying Petitioner the right to present a defense."[3] Docket No. 2. Petitioner's claim is rooted in the Sixth Amendment, which, among other rights, confers onto an accused the right "to have compulsory process for obtaining witnesses in his favor." U.S. CONST. amend. VI. While the Supreme Court has determined that this

---

[3] While Petitioner cites no cases for this argument in his habeas petition, Docket No. 1, his brief to the Minnesota Court of Appeals cited *Washington v. Texas*, 388 U.S. 14 (1967); *Chambers v. Mississippi*, 410 U.S. 284 (1973); and *California v. Trombetta*, 467 U.S. 479 (1984).

right applies in state proceedings, *Washington v. Texas*, 388 U.S. 14, 19 (1967), the right to present favorable witnesses is not unqualified.

In *Skillicorn v. Luebbers*, the Eighth Circuit affirmed the denial of habeas relief to a state prisoner who claimed that his due process rights were violated by excluding accomplice testimony similar to that proffered by Petitioner. 475 F.3d 965, 970-71 (8th Cir. 2007). The court held that the accomplice's statement could be excluded because it was not sufficiently against the declarant's penal interest and because the statement was uncorroborated by evidence. *Id.* The Eighth Circuit instructed "that a defendant has a right to proffer exonerating statements, that would otherwise be hearsay, if they were made under circumstances providing '*considerable assurance of their reliability.*'" *Id.* at 970 (emphasis added) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 300 (1973)).

The Minnesota Court of Appeals concluded that the trial court did not err in excluding the two proffered out-of-court statements because the statements "expressly contradict" other evidence in the record. *Silvestrini*, 2009 WL 233370, at *9. The Minnesota Court of Appeals based its decision on the number discrepancies between the proffered statements and evidence concerning (1) the number of camouflage masks purchased prior to the home invasion, (2) the type of gun that was used, (3) whether there was a firing pin in the gun that was used, and (4) the intended target of the mace attack that occurred when the intruders entered the victims' bedroom. *Id.*  This court finds no error in the Minnesota Court of Appeals' factual determinations or application of clearly established federal law.

19

**E.  Trial Judge Neutrality**

Petitioner next argues that the trial judge failed to maintain a neutral position before the jury by interjecting himself into the presentation of evidence, thereby violating Petitioner's right to a fair trial. Docket No. 1. Petitioner's argument fails to show that the trial judge acted outside the permissible level of discretion.

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the right to a fair trial. U.S. Const. amend. XIV. Included in the right to due process is the right to be tried by an impartial judge. *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997). However, a judge's remarks will not "constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). To that end, remarks by a judge that are merely critical or disapproving of a party do not support a claim of failure to maintain neutrality. *Id.* A habeas petitioner must show that "the judge was actually biased or prejudiced against" him. *Dyas v. Lockhart*, 705 F.2d 993, 996 (8th Cir. 1983). When applying the *Dyas* test, a habeas court must "presume the honesty and integrity of those serving as judges." *Id.* at 997.

Petitioner provides no factual basis to support his claim that the trial judge failed to remain neutral. The Court notes that when arguing the neutrality claim before the Minnesota Court of Appeals, Petitioner argued that defense counsel was "demeaned" in front of the jury "on at least four occasions" where the trial judge "responded to defense counsel's legal objections not by simply ruling on the objection but by pointing out why,

in the court's view, the objection failed as a matter of law." Docket No. 11 at 33, 35. In affirming the trial court, the Minnesota Court of Appeals stated that "[w]hat [Petitioner] cites as disparagements are merely explanations by the district court of its rulings on certain objections." *Silvestrini*, 2009 WL 233370, at *11.

In his closing charge to the jury, the trial judge properly instructed the jurors that he did not "intend[] to indicate [his] opinion regarding the facts or outcome of this case" through any of his rulings. Trial Tr. vol. 8, 1128, Apr. 24, 2007. He also properly admonished the jury to disregard anything he said that might indicate he had such an opinion. *Id.*

Thus, the remarks made by the judge do not rise to the level of actual bias or prejudice as required for habeas corpus relief. *Dyas*, 705 F.2d at 996. This court finds no error in the Minnesota Court of Appeals' factual determinations or application of clearly established federal law. 28 U.S.C. § 2254(e)(1).

## IV.    CERTIFICATE OF APPEALABILITY

A habeas corpus petitioner seeking redress under 28 U.S.C. § 2254 cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). By statute, a Certificate of Appealability is not granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). In order to satisfy this threshold, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong." *Slack v. Daniel*, 529 U.S.

473, 484 (2000).

In this case, the Court recommends that Petitioner should be granted a Certificate

of Appealability for the following issue:

> "Whether the admission of statements obtained during a custodial interview conducted without probable cause had a substantial and injurious effect or influence in determining the jury's verdict such that any error was not harmless."

## V.    RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED** that:

1.  The Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 by a Person in Federal Custody (Docket No. 1) be **DENIED** and **DISMISSED WITH PREJUDICE;** and

2.  The Certificate of Appealability be **GRANTED** for the following issue:

    > Whether the admission of statements obtained during a custodial interview conducted without probable cause had a substantial and injurious effect or influence in determining the jury's verdict such that any error was not harmless.

3.  The Clerk of Court be ordered to enter judgment accordingly.

Dated: May 1, 2012                                    *s/ Tony N. Leung*
                                                      Tony N. Leung
                                                      United States Magistrate Judge
                                                      for the District of Minnesota
                                                      *Silvestrini v. Reiser*
                                                      CASE NO. 0:10-CV-03292-SRN-TNL

22

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **May 16, 2012**.